**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>JAN N. EVOLA,<br><br><div align="right">Debtor.</div> | Case No.:    25-17633-ABA<br><br>Chapter:    7<br><br>Hearing:    November 19, 2025<br><br>Judge:    Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

Before this court is the Debtor's *Motion to Transfer Case To Southern District of New York, Motion To Reinstate Stay* (respectively "Motion to Transfer" and "Motion to Reinstate Stay"). Doc. No. 56. For the reasons that follow, the court denies the Motion to Transfer and the Motion to Reinstate Stay. The case shall not be transferred to the Southern District of New York and the automatic stay shall not be reinstated as to creditor, WSFS FSB, d/b/a Christiana Trust, not Individually but as Trust for Pretium Mortgage Acquisition Trust ("WSFS").

**JURISDICTION AND VENUE**

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G), and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The record is now closed and pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

**BACKGROUND AND PROCEDURAL HISTORY**

Debtor, Jan N. Evola, who along with her husband Maurizio are unsuccessful serial filers of 11 individual chapter 13 bankruptcy cases between them (all which never completed), filed this new chapter 7- no asset bankruptcy case[1] on July 21, 2025. Maureen P. Steady was appointed the

---

[1] The distinction between the multiple unsuccessful chapter 13 bankruptcy cases and this new chapter 7 bankruptcy case has absolutely no effect on any of the court's decision making in this case. There simply is no impact.

chapter 7 Trustee. On August 25, 2025, the Debtor filed an adversary proceeding - Adversary Proceeding Case No. 25-01344 (the "Adversary Proceeding").[2]

On August 28, 2025, WSFS, filed a Motion for Relief from Stay (the "Stay Relief Motion"). Doc. No. 32. WSFS asserted it was the owner of real property located at 59 Stoneham Drive, Delran, NJ 08075 (the "Property") by way of a foreclosure action filed by Ditech Financial LLC/Green Tree Servicing, LLC ("Ditech") against Maurizio Evola, the Debtor, and others.[3] A Foreclosure Judgment in favor of Ditech was entered on March 23, 2018. Doc. No. 32-5. On September 13, 2018, Ditech assigned the Evola mortgage to WSFS. Doc. Nos. 32-4 and 62-2. Eventually a foreclosure sale was held on November 30, 2023, and a Sheriff's Deed was subsequently issued to WSFS on December 5, 2023. Doc. No. 32, ¶4 and Doc. No. 32-6. A Writ of Possession was issued by the Superior Court of New Jersey on May 2, 2025. Doc. No. 73-2. The Writ of Possession specifically identifies WSFS as assignee of Ditech. *Id.* At the time of the Stay Relief Motion, WSFS was and remains the owner of the Property. Doc. No. 32-1, ¶13.

Following entry of the Foreclosure Judgment*, but after assignment of the Evola mortgage to WSFS*, Ditech and its related companies filed for bankruptcy in the Southern District of New York on February 11, 2019. *In re Ditech Holding Corporation*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y.) ("Ditech Case"). The pre-petition assignment of the Evola mortgage by Ditech to WSFS was not avoided during the pendency of the Ditech Case. The final decree in the Ditech Case was issued on February 22, 2022. Doc. No. 62, Ex. C.

On September 12, 2025, the Debtor filed an Opposition to the Stay Relief Motion raising numerous grounds for denying stay relief. Doc. No. 42. WSFS filed a Response on September 15, 2025. Doc. No. 44. The court conducted a hearing on September 16, 2025, at which the court held

---

[2] The amended adversary complaint asserts claims seeking to (1) Disallow/Expunge Claim (§§ 502, Rule 3001); (2) Avoid Constructive/Actual Fraudulent Transfers (§§ 548, 544(b) & N.J.S.A. 25:2-25 et seq.); (3) Avoid Unauthorized Post-Petition Transfers (§ 549) with Recovery (§ 550) and Preservation (§ 551); (4) Declaratory and Injunctive Relief (§ 105(a)); (5) Contempt and Enforcement of § 1141 Plan Discharge (Taggart); (6) Damages for Stay/Discharge Violations (§§ 362(k), 105); and (vii) Turnover and Accounting (§ 542). AP Docket No. 25-01344, Doc. No. 9.

[3] The Debtor and her spouse, Maurizio Evola, had been delinquent on the mortgage obligations since at least May 15, 2008, when Maurizio Evola filed his first bankruptcy case (Case No. 08-19079). The Evolas originally executed the note and mortgage on July 8, 2003, with Countrywide Home Loans, Inc. as the lender. Doc. Nos. 32-1 and 2. The Evola mortgage was first assigned on August 14, 2008 to MERS as nominee as nominee of Countrywide Home Loans Inc. to Countrywide Home Loans. Doc. No. 32-5. On January 28, 2011, the mortgage was assigned by Countrywide Home Loans Inc. to BAC Home Loans Servicing. L.P. F/K/A Countrywide Home Loan Serving, Inc. *Id*. This assignment was invalidated by the Discharge of Assignment of Mortgage executed on August 31, 2018. Doc. No. 62-2. On September 13, 2018, the mortgage was assigned by Ditech Financial LLC FKA Green Tree Servicing LLC sometimes known as Green Tree Services LLC to Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not Individually But As Trustee for Pretium Mortgage Acquisition Trust. Doc. No. 32-5. A court may take judicial notice of public records. *See* Fed. R. Evid. 201(b); *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 632 n.1 (E.D. Pa. 2019) (taking judicial notice of the contents of a publicly filed mortgage record); *Hasson v. FullStory, Inc.*, No. 2:22-CV-1246, 2023 WL 4727619, at *1 (W.D. Pa. July 25, 2023) (holding a court may take judicial notice of public records); *Meyer v. PHH Mortg. Corp.,* No. CV 16-2255 (JBS/JS), 2016 WL 5934691, at *3 (D.N.J. Oct. 11, 2016) ("The recording of a mortgage is a matter of public record") (citing N.J.S.A. 46:26A-2); *Grooms v. PennyMac Loan Services, LLC*, No. CV 22-3386, 2023 WL 2646921, at *1 n.1 (E.D. Pa. Mar. 27, 2023) ("Courts in this district regularly take judicial notice of publicly recorded mortgages") (citations omitted).

oral argument, and both parties had the opportunity to present their full positions. At the end of the hearing, the court directed WSFS to file additional briefing by September 30, 2025, the Debtor to file a response by October 7, 2025, and scheduled a hearing for October 21, 2025. *See* Docket Note of September 16, 2025.[4] WSFS timely filed its brief on September 30, 2025, while the Debtor failed to file anything.

As the Debtor had already filed pleadings and thereafter made her arguments at the original hearing and provided no further response to WSFS's supplemental brief, pursuant to D.N.J. L.B.R. 9013-3, the court in its discretion, decided the matter on the arguments already made and pleadings submitted without the need of any additional oral argument. On October 10, 2025, the court docketed an oral opinion with a run time of 30 minutes and 37 seconds. Doc. No. 50 ("Stay Relief Opinion").[5] An Order Granting Motion For Relief From Stay with Prospective and/or In Rem Relief Including Waiver of the 14 Day Stay was docketed simultaneous therewith. Doc. No. 51 ("Stay Relief Order").

---

[4] The September 16, 2025 docket note provides:

> Minute of 9/16/2025 Hearing Held and Continued. OUTCOME: Mr. Lebron to file brief by 9/30/2025; Mr. Landau to file response by 10/7/2025. Adjourned to 10/21/2025 at 2:00 PM. (related document:32 Motion for Relief from Stay re: 59 STONEHAM DRIVE, DELRAN, NJ 08075. Fee Amount $ 199., in addition to Motion for Prospective Relief Filed by R. A. Lebron on behalf of WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUST FOR PRETIUM MORTGAGE ACQUISITION TRUST. Hearing scheduled for 9/23/2025 at 10:00 AM, ABA - Courtroom 4B, Camden. (Attachments: # 1 Certification in Support of Motion # 2 Exhibit A: Note # 3 Exhibit B: Mortgage # 4 Exhibit C: Assignments # 5 Exhibit D: Judgment # 6 Exhibit E: Deed # 7 Proposed Order # 8 Certificate of Service) (Lebron, R.) Modified on 8/29/2025 HEARING ON SHORTEN TIME - TO BE HEARD ON 9/16/25 AT 10:30 A.M. (har). Filed by Creditor WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUST FOR PRETIUM MORTGAGE ACQUISITION TRUST) Hearing scheduled for 10/21/2025 at 02:00 PM, ABA - Courtroom 4B, Camden. (as) (Entered: 09/16/2025).

According to the court's CM/ECF system the notice of the September 16, 2025 Docket Note was electronically mailed to: Vincent Aprile at vincent.aprile@outlook.com, Kenneth Borger at kborger@raslg.com, Eric Landau at ericslandau@gmail.com, R.A. Lebron at bankruptcy@fskslaw.com, Maureen P. Steady at trustee@kurtzmansteady.com, and U.S. Trustee at USTPRegion03.NE.ECF@usdoj.gov. Electronic notice and service by the court to registered users is permitted by Fed. R. Bankr. P. 9036(a), (b)(1). Mr. Landau is a registered user.

[5] The October 10, 2025 Docket Note at Doc. No. 50 provides:

> PDF with attached Audio File. Court Date & Time [10/10/2025 01:39:43 PM]. File Size [ 7206 KB ]. Run Time [ 00:30:37 ]. (admin). Related document(s) 32 Motion for Relief from Stay re: 59 STONEHAM DRIVE, DELRAN, NJ 08075. Fee Amount $ 199. filed by Creditor WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUST FOR PRETIUM MORTGAGE ACQUISITION TRUST. Modified on 10/10/2025 (as). (Entered: 10/10/2025)

According to the court's CM/ECF system the notice of the 10/10/2025 PDF with attached Audio File, was electronically mailed to: Vincent Aprile at vincent.aprile@outlook.com, Kenneth Borger at kborger@raslg.com, Eric Landau at ericslandau@gmail.com, R.A. Lebron at bankruptcy@fskslaw.com, Maureen P. Steady at trustee@kurtzmansteady.com, and U.S. Trustee at USTPRegion03.NE.ECF@usdoj.gov at 3:00. p.m. on 10/10/2025. Electronic notice and service by the court to registered users is permitted by Fed. R. Bankr. P. 9036(a), (b)(1). Mr. Landau is a registered user.

After reviewing Third Circuit and New Jersey state court precedent, the court held that WSFS as owner of the Property purchased from the foreclosure sale had standing to bring a motion for stay relief. This remains unchanged. The court further held that at the time of the filing of her case, the Debtor had no legal or equitable interest in the Property because of the foreclosure sale and the subsequent issuance of the Sheriff's Deed.

Next the court rejected the Debtor's argument that Ditech's bankruptcy case stayed proceedings against the Property. The court held that the assignment of the Debtor's mortgage to WSFS occurred before Ditech filed for bankruptcy. The court also noted the automatic stay prohibits actions taken against a debtor and not actions that the inure to the benefit of the debtor such as the sale of property which would bring money into the estate. The court also rejected the Debtor's argument that the Southern District of New York was the exclusive forum to resolve matters relating to Ditech's estate. The court reiterated that the Property was not property of the Ditech estate because the Debtor's mortgage had been assigned prior to Ditech bankruptcy filing.

The court also rejected the Debtor's assertions that assignments of the mortgage and the sheriff's sale are void for lack of consideration, fraudulent transfer, and failure to obtain bankruptcy court approval and void for lack of reasonably equivalent value under Section 544 and N.J. Stat. Ann. § 25:2-25(a) (UFTA). The court concluded the Debtor had a full and fair opportunity to litigate these claims in state court and did. The issues should have naturally been raised in state court over 7 years ago, or the Debtor should have sought relief from the Foreclosure Judgment. The court held that (1) the Full Faith and Credit statute, 28 U.S.C. § 1738, requires the foreclosure judgment be accorded the same respect and finality in federal court it would receive in its state of origin; and (2) any claims relating to the foreclosure are barred by claim preclusion.

The court held that stay relief was proper because the prejudice to WSFS was greater than any prejudice to the Debtor who is not the owner of the property and even if the Debtor was successful in her adversary proceeding, she would not be able to recover the Property itself but rather only monetary compensation. Finally, the court determined that prospective relief was warranted under Section 362(d)(4), 11 U.S.C. § 362(d)(4), because it found that the filing of the petition was part of a repeated scheme to delay, hinder, or defraud creditors involving multiple bankruptcy filings by the Debtor and/or her spouse affecting the Property. The court imposed a two-year bar on the Debtor.

The Stay Relief Order *remains a final order*.[6] The Debtor did not appeal or otherwise seek to set aside the Stay Relief Order. Instead, some 24 days later, on November 4, 2025, the Debtor responded to the court's oral Stay Relief Opinion and Stay Relief Order by filing the Motion to Transfer and Motion to Reinstate Stay. The Debtor also filed an Amended Complaint in the adversary proceeding on the same day. Doc. No. 58. The Trustee filed her Certification in response ("Trustee Certification") on November 12, 2025. Doc. No. 61. U.S. Bank Trust National

---

[6] "A bankruptcy court's order granting relief from the automatic stay constitutes a final order for purposes of appeal." *In re Fairfield Exec. Assocs.*, 161 B.R. 595, 598 (D.N.J. 1993). *See also Leinbach v. JP Morgan Chase Bank, NA*, No. 14-04040-JJT, 2016 WL 538882, at *3 (M.D. Pa. Feb. 11, 2016) (*citing U.S. v. Nicolet, Inc.*, 857 F.2d 202, 206 n.2 (3d Cir. 1988)).

Association ("U.S. Bank")[7] filed an Objection to the Motion to Transfer. Motion to Reinstate Stay ("Objection") on November 12, 2025. Doc. No. 62.  On November 18, 2025 at 10:58 p.m., the Debtor filed a Reply to Objection ("Reply") and additional exhibits. Doc. No. 67.  A hearing was held on November 19, 2025, and again, the parties had the opportunity to present their full positions. At the hearing, the court directed U.S. Bank to file a response to the Debtor's Reply by November 24, 2025.[8] U.S. Bank filed its Response to the Reply ("Response") in a timely manner. Doc. No. 73.  The record is now closed, and the matter is ripe for disposition.

## THE PARTIES' ARGUMENTS

So that there can be no misguided suggestions that the court did not consider the arguments and pleadings of the parties, it is compelled to painfully restate the arguments here no matter how specious or baseless some of them they may be.

The Debtor returns to arguments that the court comprehensively rejected in its oral opinion. Doc. No. 50. The Debtor continues to insist that her mortgage was part of the Ditech estate and that her mortgage was transferred away in violation of the Ditech automatic stay and final plan confirmation, and discharge order. According to the Debtor, this court's Stay Relief Order is void *ab initio* and this court must grant relief pursuant to Rule 60(b)(4). Doc. No. 56-1 at 6. The Debtor attaches several orders issued by the Ditech court relating to the administration of the Ditech estate. Doc. No. 56, Ex. C-N. The Debtor argues that this court's Stay Relief Order is void *ab initio* because it was entered in excess of this court's jurisdiction and that under 28 U.S.C. § 1334(e)(1) the Southern District of New York has exclusive jurisdiction over the Property because the Ditech court never authorized the transfer of the Evola's mortgage. Doc. No. 56-1 at 2; Doc. No. 67 at 5. Debtor argues under *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), only the Ditech court may interpret or modify its injunctions, and collateral alteration elsewhere is impermissible. Doc. No. 56-1 at 7; Doc. No. 67 at 5.

In the Reply, Debtor objects to U.S. Bank's prosecution of the Objection to the Motion to Transfer and Motion to Reinstate Stay rather than WSFS, who filed the initial Motion for Stay Relief.  Doc. No. 67 at 3. Debtor argues that neither U.S. Bank nor WSFS has established possession of the note or valid chain of negotiation. Doc. No. 67 at 3-4 (citing *In re Veal*, 450 B.R. 897 (9th Cir. B.A.P. 2011); *Adams v. Madison Realty*, 853 F.2d 163 (3d Cir. 1988), and *In re Campora*, 2014 WL 3021953 (Bankr. E.D.N.Y.)).[9]

---

[7] On April 4, 2025, WSFS assigned the Evola mortgage to U.S. Bank, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust. Adversary Proceeding, Doc. No. 4-8 at Ex. E. The Court takes judicial notice of the documents filed on the Adversary Proceeding docket. *In re Davis*, 278 B.R. 429, 430 (Bankr. W.D. Mich. 2002). *See also* Federal Rule of Evidence 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). What is more, an assignee has standing. *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 285, 128 S. Ct. 2531, 2541 (2008) (courts "have always permitted the party with legal title alone to bring suit").

[8] After the hearing, Debtor's counsel filed a document attempting explain the late filing. Doc. No. 68.

[9] The Court notes that *In re Campora*, 2014 WL 3021953 (Bankr. E.D.N.Y.) does **not** exist.  An opinion holding that a stay relief movant was a party in interest where a state court had already determined that movant had standing to

5

Next, the Debtor argues that the Ditech discharge injunction bars enforcement of the Foreclosure Judgment by WSFS. The Debtor asserts that only the Ditech court can authorize enforcement of any claim, lien, or interest derived from Ditech's assets. Doc. No. 56-1 at 8; Doc. No. 67 at 6. The Debtor maintains that her mortgage is a Ditech asset and WSFS's actions are in violation of the Ditech discharge injunction. Doc. No. 56-1 at 10-11; Doc. No. 67 at 6. Debtor contends that WSFS and U.S Bank are attempting to enforce a claim that was either extinguished by or restricted by the Ditech Plan and discharge injunction and that such actions are in violation of *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). Doc. No. 56-1 at 11; Doc. No. 67 at 7.

The Debtor further argues WSFS's claim is defective because it is unfiled or defective and must be disallowed and unauthenticated exhibits must be stricken. Doc. No. 56-1 at 10. The Debtor contends that WSFS has never filed a proof of claim and that the documents attached to the Motion for Stay Relief are facially defective and unauthenticated. The Debtor asserts that WSFS's claim must be disallowed in accordance with Rule 3001 because WSFS alleged failure to file a proof of claim resulted in the absence of a prima facie presumption of validity and the court cannot rely on defective documents to sustain WSFS's standing. Doc. No. 56-1 at 11. Moreover, the Debtor argues that under 11 U.S.C. § 502(a) a claim is allowed unless a party in interest objects and the Debtor has timely objected and demonstrated that WSFS's is unsupported by admissible evidence. *Id.*

In the Reply the Debtor *for the first time argues* that WSFS was required to file a proof of claim in the Ditech Case. Doc. No. 67 at 7-9. Debtor asserts that if WSFS or U.S. Bank believed that Ditech transferred the Evola loan improperly, WSFS or U.S. Bank was required to file a claim in the Ditech Case pursuant to 11 U.S.C. 502(h) as creditor that acquired a pre-petition claim. Debtor contends that because neither bank filed a proof of claim in the Ditech bankruptcy neither holds a valid claim and neither has the statutory basis to assert a right to payment or enforce rights relating to the Evola loan. Doc. No. 67 at 8. Debtor further argues that even if the WSFS or U.S. Bank had filed a proof of claim in the Ditech Case, the claim would still fail because they have failed to produce valid assignments of the note. *Id*. at 9.

Additionally, the Debtor and/or her attorney, Eric S. Landau of Buffalo, New York, accuses this court of failing to enter proper findings and fact and conclusions of law as required by Rule 7052. The Debtor asserts "the stay relief motion was decided summarily, without evidentiary hearing, without authentication of the operative instruments, and without express findings as to the standing, ownership, or the effect of the Ditech bankruptcy injunctions. The Debtor contends the order contains no articulated reasoning, no identification of the documents relied upon, and no explanation of how conflicting notes and assignments were reconciled." Doc. No. 56-1 at 7. The Debtor argues that she was denied due process and that the absence of any evidentiary hearing or witness testimony violated Rule 9014. Doc. No. 56-1 at 7.

Finally, the Debtor boldly asserts the interest of justice require transfer of this proceeding to the Southern District of New York under Section 1412 and Bankruptcy Rule 7087. The Debtor

---

pursue the foreclosure action by issuing a judgment of foreclosure and sale does exist. *In re Campora*, No. 14-CV-5066 JFB, 2015 WL 5178823, at *5 (E.D.N.Y. Sept. 3, 2015). As discussed *supra* and in the court's Stay Relief Opinion, WSFS is the owner of the property who has enforced a valid foreclosure judgment and foreclosure sale.

reiterates her assertion that the Southern District of New York is the proper and exclusive forum because the disposition of the note and mortgage are governed by Ditech's plan and discharge injunction because WSFS and U.S. Bank never filed a proof of claim in the Ditech Case, they do not hold an allowable or enforceable claim, they rely on void assignments executed in violation of the Ditech court's orders, and they are attempting to enforce rights that can only be adjudicated by the Ditech court. Doc. No. 56-1 at 13; Doc. No. 67 at 10. The Debtor argues transfer will promote judicial economy and consistency because the Ditech court is already familiar with similar dispute. *Id.* The Debtor also contends that the Southern District of New York is more convenient because the relevant records, witnesses, and bankruptcy court orders are located there. *Id.*

The Trustee filed a Certification in Response to Debtor's Motion to Transfer and Motion to Reinstate Stay. Doc. No. 61. After reviewing the court's oral opinion, the Trustee concurs with the court's conclusion that the Property is not property of the Debtor's estate. Doc. No. 61 at ¶¶5-6. The Trustee argues that transfer to the Southern District of New York is inappropriate because the Debtor lives in New Jersey and the Property is located in New Jersey. *Id.* at ¶9. The Trustee agrees with the court that the Debtor is precluded from revisiting the state court foreclosure litigation and accordingly the Trustee has not pursued an avoidance action. *Id.* at ¶17. The Trustee takes issue with several aspects of the Debtor's case noting that her Schedules are "nonsensical," her pleadings are unclear regarding whether she or her spouse owns the Property free and clear, whether Debtor is eligible to remain a chapter 7 debtor given her excess monthly income, and the Debtor has twice appeared at the 341 meeting without her bankruptcy petition and unready to testify. Id. at ¶¶11-14, 20-22. Finally, the Trustee posits that sanctions may be appropriate given Debtor's repeated failures to review the docket, follow the procedures of this Court, and observe deadlines.

U.S. Bank filed an Objection to the Motion to Transfer and Motion to Reinstate Stay. Doc. No. 62. U.S. Bank argues that the Stay Relief Order is not void because the mortgage was assigned from Ditech to WSFS on September 13, 2018, and recorded on November 1, 2018 (Doc. No. 62-2). U.S. Bank rightfully argues that because the mortgage was assigned to WSFS prior to Ditech's bankruptcy filing in February 2019 the Evola mortgage was never part of Ditech's bankruptcy estate. Doc. No. 73 at 1-2 (quoting 11 U.S.C. § 543(a)(3) which provides that property of the estate includes "any interest in property that trustee recovers"). U.S. Bank also notes at no point during Ditech's Case did any party try to claw back the assigned mortgage. Doc. No. 62 at 2; Doc. No. 73 at 2 (quoting 11 U.S.C. § 541(a)(4) which provides that property of estate includes, "any interest in property…ordered transferred to the estate under section 510(c) or 551 of this title."). U.S. Bank notes the failure of any party to avoid the pre-petition assignment prior to confirmation results in the confirmation order being given *res judicata* effect and precludes re-litigation of any issue actually litigated by the parties, any issue necessarily determined by the confirmation order, and all issues that could have been decided at the confirmation hearing. Doc. No. 62 at 2 (citing *In re Galluzzo*, 06-15932[-SLM 2018 WL 4191476] (Bankr. D.N.J. 2018) (other citations omitted)).

U.S. Bank further argues that contrary to the Debtor's assertions there are no actual disputed issues relating to standing, chain of title, the validity of the assignments, fraudulent-transfer issues, and stay violations because there is a final judgment of foreclosure that was granted by the New Jersey Superior Court. Doc. No. 73 at 3. Any questions regarding standing, chain of title, and validity of assignment should have been raised in the state court prior to entry of the

Foreclosure Judgment and are now barred by *res judicata*, collateral estoppel/issue preclusion, and the Entire Controversy Doctrine. *Id*. U.S. Bank asserts the Entire Controversy Doctrine requires that all issues of a single dispute between the parties must be completely determined in one action. *Id*. (quoting Rule 4:27-1 which provides that "[e]ach party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine."). If the Debtor had sought to set aside the assignment, she would have been required by Rul 4:5-4 to set forth specific supporting facts and a failure to raise such claims constitutes waiver. Doc. No. 73 at (citing *Kress v. Kress*, 1 N.J. 257 (1949); *Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 463-464 (1989)). U.S. Bank also notes that the Supreme Court of the United States requires that "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so. . . ." Doc. No. 73 at 4 (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)).

U.S. Bank asserts that the Foreclosure Judgment implicitly found that the foreclosing party had valid ownership of the note, mortgage, and chain of title. U.S. Bank observes that Third Circuit recently affirmed that pursuant to 28 U.S.C. § 1738 bankruptcy courts must give full faith and credit to state foreclosure judgments where (1) the judgment in the prior action is "valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Doc. No. 73 at 5 (quoting *In re Adams*, 151 F.4th 144, 156 (3d Cir. 2025) (quoting *Watkins v. Resorts Int'l Hotel & Casino*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991)).

U.S. Bank asserts the Debtor's arguments that Evola mortgage is not identified in any approved sale pool, forward transfer schedule, reverse transfer schedule, stalking horse schedule, asset-level transfer schedule or transfer schedule approved by the Ditech court is completely meritless because the Evola mortgage was assigned to WSFS prior to Ditech's bankruptcy filing and the Evola mortgage was not an asset of the Ditech Estate. Doc. No. 73 at 5-6. U.S. Bank argues it is not its burden to show that the Evola mortgage was included in an order authorizing transfer because U.S. Bank has demonstrated the Evola mortgage was not part of the Ditech estate. Doc. No. 73 at 6.

U.S. Bank further maintains that *Celotex* and 28 U.S.C. §1334(e)(1) (exclusive jurisdiction of bankruptcy courts) are not applicable because the Evola mortgage was never part of the Ditech estate and, accordingly, not subject to the jurisdiction of the Ditech court. Doc. No. 73 at 7. U.S. Bank also rejects the Debtor's arguments that *Taggart* is applicable to this case. U.S. Bank observes that pursuant to 11 U.S.C. § 101(10), the term creditor means, an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. U.S. Bank argues there has not been any showing in the Debtor's papers to explain how WSFS could have possibly been made a creditor of Ditech on the basis that WSFS received an assignment of mortgage or that Ditech had any obligation to pay funds to WSFS. Doc. No. 73 at 9.

U.S. Bank also notes that even if the Evola mortgage was part of the Ditech estate, pursuant to 11 U.S.C. §362(c)(2) the automatic stay terminates at the earliest of when the case is closed, the case is dismissed; or for a Chapter 11 case at the time the discharge is granted. Thus, when the

8

final decree in Ditech's Case was issued on February 22, 2022, the automatic stay expired. Doc. No. 62 at 2. The automatic stay would also have expired upon Ditech's discharge. U.S. Bank argues that the Debtor is improperly asserting the protection of the automatic stay in a case in which she is not a party, and third parties do not have standing invoke the protection of the automatic stay. Doc. No. 62 at 3-4 (citing *In re Prairie Trunk Ry.*, 112 B.R. 924, 930 (Bankr. N.D. Ill. 1990) and *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196 (6th Cir. 1983)).

Even if the court assumed that the Evola mortgage was part of the Ditech estate, U.S. Bank contends the Ditech discharge order does not bar enforcement of the assignment and recordation of the mortgage which occurred before Ditech's bankruptcy filing on February 19, 2019 and the confirmation of Ditech's plan on September 26, 2019. U.S. Bank argues that because no party attempted to claw back the mortgage to bring it into the bankruptcy estate the assignment remains valid and enforceable. Doc. No. 62 at 5-6.  Pursuant to §362(c)(2), once the discharge was granted at confirmation, the automatic stay terminated. U.S. Bank notes that Ditech automatic stay was never applicable because mortgages are assets of Ditech rather than debts owed by Ditech. U.S. Bank argues the bankruptcy discharge does not discharge the enforceability of obligations owed to the Ditech. Doc. No. 62 at 6. Assuming that the Debtor was an obligor of Ditech, the discharge order did not discharge the debts owed to Ditech by third parties like the Debtor. *Id.*

With regard to the Debtor's assertions regarding the failure to file a proof of claim, U.S. Bank argues pursuant to the Rules of Bankruptcy Procedure 7001(b), a proceeding to determine the validity, priority, or extent of a lien or other interest in property must be brought as an adversary proceeding; a step the Debtor has failed to take. U.S. Bank asserts it has not filed a proof of claim because Debtor filed a "no asset" case and creditors were directed to not file proofs of claim. Doc No. 62 at 7 (citing Doc. No. 7). In its response to the Debtor's assertion that WSFS was required to file a proof of claim in the Ditech bankruptcy, U.S. Bank asserts that WSFS could not file a proof of claim because the assignment of the mortgage did not result in debt owed to WSFS by Ditech. Doc. No. 73 at 9 (citing 11 U.S.C. § 101(5)) which provides that the term "claim" means (A) a right to payment…; or (B) right to an equitable remedy for breach of performance….).  U.S. Bank argues 11 U.S.C. § 502 is completely inapplicable because there has not been any showing that WSFS had a right to payment or a right to an equitable remedy for breach of performance and because WSFS did not have a right to payment or a right to an equitable remedy for breach of performance, then WSFS had no standing, let alone any obligation to file a proof of claim in the Ditech bankruptcy case. Doc. No. 73 at 10.

Next, U.S. Bank argues that it is the Debtor who lacks standing to object to any alleged failure to file a proof of claim in the Ditech bankruptcy because he Debtor as a former mortgagor indebted to Ditech is not Ditech, the plan administrator, a trustee, the United States Trustee, or any kind of party in interest in the Ditech Case. Doc. No. 73 at 12. U.S. Bank rejects the Debtor's assertion that the burden has shifted to WSFS or U.S. Bank to prove its claim, because there is not any party in interest that filed an objection to WSFS's alleged failure to file a claim. *Id.*  U.S. Bank reiterates that Debtor's arguments are an improper collateral attack on the Foreclosure Judgment and WSFS's and U.S. Bank's right to enforce that judgment. Doc. No. 73 at 13.

U.S. Bank notes that neither WSFS nor U.S. Bank has ever asserted that the assignment of the Evola mortgage was invalid or improper and further that at no time during the pendency of the

9

Ditech Case was the assignment avoided pursuant to 11 U.S.C. §§ 522, 550, or 553 and the Property included in the Ditech estate. Doc. No. 73 at 11. Because the transfer of the Evola mortgage was not avoided, the confirmation order is given *res judicata* effect and precludes re-litigation of any issue actually litigated by the parties, any issue necessarily determined by the confirmation order, and all issues that could have been decided at the confirmation hearing. Doc. No. 73 at 12 (citing *In re Galluzzo*, 06-15932[-SLM 2018 WL 4191476] (Bankr. D.N.J. 2018); *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (citing 8 Collier Brief in Support Page 2 13267.02[1][c], at 1327-6); *Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir. 1997) (quoting *In re Szostek*, 886 F.2d 1405,1408 (3d Cir. 1989)).

Additionally, U.S. Bank argues that the Stay Relief Order is not void for lack of Rule 7052 findings and due process. U.S. Bank notes that the court made extensive findings of facts and conclusions of law satisfying rule 7052 and the Debtor's dissatisfaction does not constitute a failure to comply with Rule 7052. U.S. Bank also points out that Debtor allegedly quoted from *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S. Ct. 1367, 1378, 176 L. Ed. 2d 158 (2010) but the quoted language does not appear in *Espinosa*. Further*, Espinosa* holds that due process requires actual notice be provided to a party and the Debtor had actual notice as she filed a response and participated in the first hearing. Doc. No. 62 at 4-5.

Finally, U.S. Bank opposes transfer to the Southern District of New York. U.S. Bank argues that the Debtor has no connection to New York, no connection to the Ditech bankruptcy, and the district in which a bankruptcy case is filed is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy. Doc. No. 62 at 8 (citing 28 U.S.C. §1412 and *In re Lionel Corp.,* 24 B.R. 141, 143 (Bankr. S.D.N.Y. 1982)). U.S. Bank also notes the Ditech court recently dismissed an adversary proceeding holding, in part, that the subject property "is not, and never was, property of the [Ditech] estate. Doc. No. 62 at 8 (citing *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2025 WL 2489206, at *8 (Bankr. S.D.N.Y. Aug. 28, 2025)). The same court also found that plaintiff, like the Debtor here, did not have standing because the plaintiff lacked a direct financial stake in the outcome derived from a legally cognizable interest affected by the administration of the estate. Doc. No. 62 at 8 (citing *In re Maidan*, No. 8-19-77027, 2023 WL 2190228, at *3 (Bankr. E.D.N.Y. Feb. 23, 2023)). The Debtor was not a creditor of Ditech, but rather the Debtor is a former obligor of Ditech. The filing of the bankruptcy by Ditech did not impair the Debtor's legal rights or the ability to perform any duty. Doc. No. 62 at 9.

U.S. Bank asserts that transfer would not be in the interests of the parties or for the convenience of the parties as required by 28 U.S.C § 1412. Even if the Debtor was able to avoid the transfer, such avoidance would have to inure to the benefits of Ditech's creditors, a status which the Debtor does not hold. The parties would be inconvenienced if the case were to be moved 100 miles away to the Southern District of New York.

## DISCUSSION

The Debtor's pleadings and arguments in this case are a swirling vortex of twisted facts, warped theories, and distorted law designed to delay, hinder, or defraud creditors who are the lawful owners of the Property. The Debtor and Mr. Landau have exhibited a remarkable disregard

for this court by filing pleadings that can most accurately described as a shotgun spray supported only by vague and unsubstantiated allegations of misleading or confusing documentation relating to the mortgage and the assignments, failing to download and listen to an audio recording of the Stay Relief Opinion, and failing to file documents and pleadings in a timely manner. The court is finished indulging the Debtor and Mr. Landau.

### **Motion To Reinstate Stay**

Relief from judgment is governed by Federal Rule of Civil Procedure 60(b), which is incorporated into the Bankruptcy Rules through Rule 9024, 11 U.S.C. § 9024. *In re Galluzzo*, No. BR 06-BK-15392 (SLM), 2021 WL 9595296, at *5 (D.N.J. Oct. 25, 2021), *aff'd,* No. 22-1550, 2022 WL 10319775 (3d Cir. Oct. 18, 2022). The Supreme Court stated in *United Student Aid Funds, Inc. v. Espinosa*, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." 559 U.S. 260, 271, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (citations omitted).

The Bankruptcy Code's definition of "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The definition of "property of the estate" further includes "[a]ny interest in property that the trustee recovers…." 11 U.S.C. § 541(a)(3). The Third Circuit has noted that New Jersey Federal Courts have held that "absent actual recovery of the fraudulently transferred [property, that property is] not considered "property of the estate" under § 541." *In re Allen*, 768 F.3d 274, 282 (3d Cir. 2014). The Code defines the term "claim" to mean "a right to payment" or "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). The Code defines the term "creditor" to mean **"**entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor" or an "entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title." 11 U.S.C. § 101(10).

The Stay Relief Order is not void *ab initio*. The question before the court is whether the court erred in granting stay relief to WSFS, the owner of the Property via Sheriff's Deed. WSFS moved for relief from the stay pursuant to section 362(d)(4) and the court made extensive findings of fact and conclusions of law that the Property was neither property of the Debtor's estate nor the property of the Ditech estate and, accordingly, WSFS as the owner of the property was entitled to stay relief. These conclusions were based upon the court's analysis of New Jersey foreclosure law. Specifically, under the Gavel Rule a purchaser at sheriff's sale takes equitable title to the property sold at sheriff's sale upon the fall of the gavel. *In re Connors*, 497 F.3d 314, 320–21 (3d Cir. 2007). More importantly, "[a] purchaser at a mortgage foreclosure sale obtains the legal right to possession of land purchased as soon as he obtains a deed from the selling officer." *In re St. Clair*, 251 B.R. 660, 665 (D.N.J. 2000) *aff'd sub nom. St. Clair v. Wood*, 281 F.3d 224 (3d Cir. 2001) (citing 30 *New Jersey Practice,* Law of Mortgages § 373). That is exactly want happened here. The foreclosure sale was held on November 30, 2023, and a Sheriff's Deed issued to WSFS on December 5, 2023. WFSF is the lawful owner of the Property. The court stands by its findings and conclusions. The facts and law are clear. There is no basis to reinstate the stay.

The Debtor's entire case is premised upon one completely faulty assumption — that the Property was property of the Ditech bankruptcy estate. The Stay Relief Order did not violate an order of the Ditech court because the mortgage was not property of the Ditech estate. *See In re Wei-Fung Chang*, 438 B.R. 77, 85 (Bankr. M.D. Pa. 2010) ("actions against the [p]roperty did not violate the automatic stay, which was in force only as to property of the estate."). Any property falling outside the property of estate is not covered by the automatic stay. 11 U.S.C. § 362(a) (automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over the property").

The Debtor refuses to accept that Ditech's assignment of the mortgage to WSFS on September 13, 2018, five months prior to Ditech's bankruptcy filing on February 11, 2018 was effective. When seeking stay relief, WSFS attached a series of endorsed assignments and the recordation pages. Doc. No. 32, Ex. C. The Debtor was given an opportunity to provide evidence to rebut WSFS's evidence but put forth only vague allegations that the endorsed assignments were confusing and misleading. When given the further opportunity to supplement the record after oral arguments were made, the Debtor chose not to. Acting pursuant to D.N.J. L.B.R. 9013-3(d)(2)[10] and only after oral arguments were made and papers submitted by the parties, the court docketed its oral opinion with a runtime of over 30 minutes that made numerous findings of fact and conclusions of law. The court concisely articulated its reasoning for granting WSFS stay relief. To wit, the court concluded the assignment of the Evola mortgage from Ditech to WSFS five months prior to filing of Ditech's bankruptcy was effective. The Evola mortgage was thus **_never_** part of the Ditech bankruptcy estate and the Ditech court has not and cannot exercise jurisdiction over the mortgage or any claims related to the Property. The court also spent a significant amount of time to establish that the Property was not a part of the Debtor's estate because the foreclosure sale and delivery of the sheriff's deed divested the Debtor of her of any legal or equitable interest in the Property. *In re Rocco*, 319 B.R. 411, 415–16 (Bankr. W.D. Pa. 2005) (analyzing similar state law), *subsequently aff'd sub nom. Rocco v. J.P. Morgan Chase Bank*, 255 F. App'x 638 (3d Cir. 2007).

The court remains satisfied that WSFS, as the undisputed owner of the Property *through a Deed*, has demonstrated not only its standing, but also that Ditech's assignment of the mortgage was effective.[11]  *In re Boydstun*, No. WO-19-020, 2020 WL 241492, at *5(B.A.P. 10th Cir. Jan.

---

[10]  Local Rule 9013-3(d)(2) provides:

> (2) Contested motions. The court will permit oral argument from only the movant or a party that has filed opposition to a motion. The court retains discretion to decide contested motions without oral argument.

[11] The Writ of Possession itself specifically identifies WSFS as assignee of Ditech. Adversary Proceeding, Doc. No. 73-2. As noted *supra*, the court, in resolving this Motion to Transfer and Motion to Reinstate Stay, has considered all the briefing submitted to it by the Debtor and U.S. Bank. The court also reviewed the original Stay Relief Motion prosecuted by WSFS, the Debtor's opposition thereto, and its own Stay Relief Opinion. The Debtor has noted that U.S. Bank and not WSFS objected to the Motion to Transfer and Motion to Reinstate Stay. While the court also finds this somewhat curious, the court observes that WSFS assigned the mortgage to U.S. Bank after the foreclosure sale but prior to issuance of the Writ of Possession. WSFS remains the legal owner of the Property, who was entitled to prosecute the Stay Relief Motion, as WSFS merely assigned a mortgage and not the Property itself. Assignments of mortgages are presumptively valid and as assignee of WSFS, U.S. Bank presumptively has standing to object to the Motion to Transfer and the Motion to Reinstate Stay. The court acknowledges that U.S. Bank provided a comprehensive rebuttal to the Debtor's argument. ***Nevertheless, the court wishes to make it crystal clear*** to the Debtor,

16, 2020) (holding that Selene by presenting the court with the note, mortgage, and assignments along with the final state court foreclosure judgment "met the low threshold of proving it was a party in interest with a colorable claim for stay relief as the noteholder and assignee of the [m]ortgage.") (citing *In re Castro*, 503 Fed. Appx. 612 (10th Cir. 2012) which held creditor met low threshold of establishing a colorable claim of lien on property of the estate by showing it was assignee of mortgage and promissory note and party in interest with standing under § 362(d) to seek relief)).

Any arguments the Debtor has made that WSFS's actions are in violation of the Ditech court's orders are wholly unsupported and roundly rejected by the court. The Debtor has made numerous erroneous arguments regarding the Ditech court's jurisdiction over the mortgage which are entirely dependent upon this court accepting Debtor's argument that Ditech's assignment of the mortgage to WSFS was improper. The Debtor has not presented this court with any evidence that any court has found the assignment was avoidable and the mortgage became an asset of the Ditech estate. Because the assignment of Evola mortgage was presumptively valid, the mortgage was not property of the estate when Ditech filed for bankruptcy. Pursuant to Third Circuit case law, the Ditech estate would have been required to file suit to avoid the transfer and win that action in order for the mortgage to be considered property of the Ditech estate. *In re Allen*, 768 F.3d at 282. No such event occurred and the Evola mortgage never became part of the Ditech estate and all of the Debtor's arguments regarding the exclusive jurisdiction of the Ditech court fail on that very simple ground. A transfer of this case to that venue would also be futile as a result.

The court now turns to Debtor's arguments regarding WSFS's alleged failure to file a proof of claim in both the Ditech Case and the Debtor's case. The Debtor bizarrely, even preposterously, argues that WSFS, who at all times has maintained that Ditech's mortgage assignment was valid, should have upon Ditech's bankruptcy filing *sua sponte* recognized that the Evola mortgage assignment was invalid and that as pre-petition "creditor" of Ditech WSFS needed to file a proof of claim. The Debtor does not explain how, other than vague allegations that the various assignments were confusing or misleading, WSFS should have known that the assignment was invalid as asserted by the Debtor. Assignments of mortgages are presumptively valid, and the Debtor has not rebutted this presumption. *Benson v. Metro. Life Ins. Co.*, No. 4:23-CV-40177-MRG, 2024 WL 4228834, at *8 (D. Mass. Sep. 18, 2024) (court found that chain of assignment executed in compliance of with statutory requirements were presumptively valid); *Cuomo v. United States Bank, N.A.*, No. 17-485-WES, 2018 U.S. Dist. LEXIS 141668, at *13 (D.R.I. Feb. 8, 2018) ("an assignment that is executed and recorded in accordance with the statute is presumptively valid); *Bupm NJ Assets LLC v. 15 N. Dean St., LLC*, No. F-6651-23, 2024 N.J. Super. Unpub. LEXIS 596, *16 (N.J. Super. Apr. 5, 2024) ("Assignments are presumed valid, a presumption that may be rebutted if two or more entities are claiming ownership of the [n]ote and [m]ortgage."). Because the Ditech assignment is presumed valid, there is/was no way for WSFS to ascertain that it had a claim, i.e., a right to payment or that it was a creditor of Ditech as "entity

---

WSFS, and U.S. Bank that its decision to deny the Motion to Reinstate Stay is based solely on the court's own analysis of the facts and law which do not change no matter the party that is presenting the arguments. Further, opposition to a Rule 60(b) motion is not a prerequisite to a denial of such a motion. *Claudio v. Portuondo*, No. 01 CV 5180 (RJD), 2 2014 WL 1347185, at *7 (E.D.N.Y. Mar. 31, 2014) (denying unopposed Rule 60(b)(4) motion where judgment was not void); *Kuku v. Olushola*, No. 20-cv-4370 (SDW) (LDW), 2021 WL 494750 (D.N.J. Jan. 25, 2021) (recommending denial of unopposed Rule 60(b) motion as movant had not satisfied the standards of Rule 60(b)).

13

that has a claim against" Ditech. *See* 11 U.S.C. § 101(5), (10). WSFS was not obligated in any way to file a proof of claim in the Ditech bankruptcy and all of the Debtor's arguments regarding Section 502 fail.

The court also rejects the Debtor's disingenuous argument regarding WSFS's alleged failure to file a proof of claim in Debtor's case. The Debtor has filed a no-asset chapter 7 bankruptcy case. When there are no asset creditors are not required to file a proof of claim, and a bar date is never set. *In re Judd*, 78 F.3d 110, 114 (3d Cir. 1996) ("Because this is a "no-asset" Chapter 7 case, the time for filing a claim has not, and never will, expire unless some exempt assets are discovered."); *In re Steele,* Nos. 04-14597DWS, 04-0731, 2005 Bankr. LEXIS 1595, at *17 (Bankr. E.D. Pa. Aug. 15, 2005) ("Since this is a no-asset case, there is no proof of claim required to be filed and the claim will not be adjudicated in this forum."); *In re Gullone*, 301 B.R. 683, 689-90 (Bankr. D.N.J. 2003) (stating that in a no-asset Chapter 7 case, "no proofs of claim are required to be filed."); *In re Toms*, 229 B.R. 646, 650 n.3 (Bankr. E.D. Pa. 1999) (Fed. R. Bankr. P. 2002(e) provides that in a no asset case the filing of a proof of claim is unnecessary). Indeed, even the court's own *Notice of Chapter 7 Bankruptcy Case - - No Proof of Claim Deadline*, Doc. No. 6, states "please do not file a proof of claim now." *Id*. at Pt. 10. Accordingly, WSFS's decision to not file a proof of claim is irrelevant and the Debtor's arguments fail.

To the extent that Debtor is in any doubt regarding the status of her alleged legal or equitable interest in the property, WSFS's or U.S. Bank's standing, chain of title, and validity of assignment the court concludes that any such claims are barred by, at the very least, *res judicata*/claim preclusion, the Full Faith and Credit Statute, 28 U.S.C. § 1738, and the Entire Controversy Doctrine. The court also concludes that even it was to accept the Debtor's arguments regarding alleged exclusive jurisdiction of the Ditech court, the Debtor arguments would still fail because her claims regarding the mortgage are barred by *res judicata*/claim preclusion and the Entire Controversy Doctrine.

"Under the doctrine of claim preclusion," a prior "final judgment forecloses 'successive litigation of the very same claim.'" *Adams*, 151 F.4th at 153 (other citations omitted). Under Federal law, a debtor's claims are precluded if the foreclosure judgment was "valid, final, and on the merits; (2) the parties in the later action are identical to, or in privity with, those in the prior action; and (3) her claim in this later action stems from the same transaction or occurrence as the claim in the earlier foreclosure action. *Id*. at 156 (internal quotations marks omitted).

The court concludes the Foreclosure Judgment was valid, final, and on the merits; (2) Ditech, WSFS, and U.S. Bank were in privity via the valid chain of assignment; and (3) and the Debtor's claims are nothing more than a rehashing of the foreclosure and an attempt to overturn the state court's foreclosure decision. It is evident that the Debtor and/or her spouse participated in the state court litigation where a valid final ruling on the merits was issued. The Debtor had a full and fair opportunity to litigate these claims in state court and did. The issues regarding the validity of assignment going back to initial assignment in 2008 should have naturally been raised in state court over 7 years ago. If not, the Debtor should have sought relief from the Foreclosure Judgment. The fact that there was a foreclosure sale and a Sheriff's Deed issued, demonstrates that the Debtor was not successful in state court. The law is clear, an entry of a final judgment in a state court of competent jurisdiction must be binding in a later bankruptcy proceeding. *Adams*, 151 F.4th

at 152. ("Imagine a legal system in which that were a winning strategy: If you whiff in state court, take your mulligan and come to federal court for another swing. State-court judgments would be near-worthless. To ensure those judgments receive the full faith and credit promised by the Constitution, art. IV, § 1, and to safeguard the efficiency and finality of litigation, we apply principles of preclusion"); *Id*. at 153 ("Issue preclusion…bars successive litigation of an issue of fact or law that was actually litigated[,] resolved in a valid court determination[, and] essential to th[at] prior judgment, even if the issue recurs in the context of a different claim.") (other citations omitted). The same reasoning applies to any claims the Debtor would attempt to bring before the Ditech court thereby obviating the need to transfer the case to that court.[12]

The Debtor's claims regarding the Property and the assignment are also barred by the Full Faith and Credit Statute. The court is required to give the same full faith and credit to the New Jersey foreclosure judgment as it would receive in New Jersey. *See* 28 U.S.C. § 1738; *In re Knapper*, 407 F.3d 573, 584 (3d Cir. 2005) ("a final judgment has been entered by the state court, the Full Faith and Credit statute, 28 U.S.C. § 1738, requires such judgment be accorded the same respect and finality in federal court it would receive in its state of origin. *McDonald v. City of West Branch*, 466 U.S. 284, 287, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). It is inappropriate, therefore, for the Bankruptcy Court to stand in judgment of the merits of the valid state court judgment.").

The Entire Controversy Doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *In re Farzan*, Nos. 24-1236, 24-1237, 2025 WL 100798, at *2 (3d Cir. Jan. 15, 2025) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (internal quotation marks and citation omitted)). In the context of foreclosure proceedings, the doctrine is narrowed, allowing only "germane" claims to be precluded if they are not brought by a party to the case. *In re Ladika*, Nos. 23-18387, 24-01064, 2024 WL 4712991, at *3 (Bankr. D.N.J. Nov. 7, 2024) (citing N.J. Ct. R. 4:64-5). If claims arise out of the mortgage that is the basis of the foreclosure action, then they are considered germane. *Id*. (citing *Leisure Tech-N.E., Inc. v. Klingbeil Holding Co*., 137 N.J. Super. 353, 358, 349 A.2d 96 (App. Div. 1975); *Delacruz v. Alfieri*, 447 N.J. Super. 1, 12-16, 145 A.3d 695 (Law Div. 2015)). Here, all of the Debtor's claims and complaints originate from and are germane to the mortgage, the assignments, and the foreclosure and are precluded by the Entire Controversy Doctrine.

Next the court will address allegations made by Mr. Landau regarding the court's compliance with Bankruptcy Rule 7052. As to Mr. Landau's completely baseless complaints regarding the court's compliance with Rule 7052, the court observes that oral findings of fact and conclusions of law are authorized by Rule of Civil Procedure 52(a)(1)[13] made applicable to these

---

[12] The court has repeatedly expressed to Mr. Landau that any relief he seeks on behalf of the Debtor from the Foreclosure Judgment and/or the Sheriff's Deed must come from the state court. His stated reluctance or unwillingness to seek that relief in state court can serve as no basis to grant relief here.

[13] Rule of Civil Procedure 52(a)(1) provides:

> (1) *In General.* In an action tried on the facts without a jury or with an advisory jury, the court must find the fact(a)s specially and state its conclusions of law separately. The findings and conclusions

proceedings by Bankruptcy Rules 9014(c) and 7052. Without question, Mr. Landau was served with and received notice of the court's oral Stay Relief Opinion, Doc. No. 50. *See* footnote 5, above. Electronic notice and service by the court to registered users of its CM/ECF system is specifically permitted by Fed. R. Bankr. P. 9036(a)(b)(1) and Mr. Landau is a registered user of that system as evidenced by his multiple electronic filings in this case. It is unclear to the court whether Mr. Landau is merely ignoring the court's oral Stay Relief Opinion because he dislikes the court's decision or whether Mr. Landau abjectly failed to access the audio file uploaded to the docket and believes that the concurrently docketed Stay Relief Order was the court's sole expression on the Motion for Stay Relief. It beggars belief that Mr. Landau has alleged that a more than 30 minute oral opinion is devoid of either findings of fact or conclusions of law. Nevertheless, Mr. Landau's allegations are completely groundless as evidenced by the summary of the court's oral opinion provided *supra*. *In re Kempner*, 152 B.R. 37, 41 (D. Del. 1993) (oral orders that sufficiently explain rationale of denial of motion provide for meaningful appellate review and do not violate the requirements of Bankruptcy Rule 7052); *In re Wilson*, 168 B.R. 90, 91 (Bankr. M.D.N.C. 1994) ("All that is required is that the bankruptcy judge make the basis of his ruling clear and, thus, reviewable."). Mr. Landau's failures with relation to the Stay Relief Opinion is but the tip of the iceberg when it comes to his complete inability to abide by this court's procedures, deadlines, and orders.[14]

For all the foregoing reasons, the court concludes that relief under Rule 60(b)(4) is not appropriate because the court has not committed any jurisdictional error or violation of due process that deprived the Debtor of notice or the opportunity. Accordingly, the court denies the Debtor's Motion to Reinstate Stay.

---

may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

[14] Despite the fact that Mr. Landau is an experience bankruptcy practitioner and the Debtor has filed three (3) prior individual chapter 13 cases (Case Nos. 10-49437(dismissed), 14-21647(dismissed), 23-12806 (dismissed)) and her spouse, Maurizio Evola has filed eight (8) individual chapter 13 cases (Case Nos. 08-19079 (dismissed), 08-22881 (dismissed), 09-10957 (dismissed), 09-36881 (dismissed), 18-23496 (dismissed), 19-15714 (dismissed), 22-12324 (dismissed), and 24-16624 (dismissed)) and thus was very familiar with the bankruptcy process, the court was compelled to file an Order to Show Cause Why Case Should Not be Dismissed for re: Failure to Meet Credit Counseling Requirements, Failure to Comply with Local Rule 1006, Failure to File Missing Documents. Missing Documents: Summary of Assets/Liabilities and Stat Info - Individuals, Declaration About An Individuals Schedule, Statement of Financial Affairs For Individuals, Atty Disclosure Statement, Statement of Your Current Monthly Income (122A-1), Means Test Calculation (122A-2) - If Applicable, Stmt of Exemption From Presumption of Abuse (122A-1 Supp) - If Applicable, List of All Creditors, and Schedules A/B,C,D,E/F,G,H,I and J. *See* Doc. No. 4. On August 8, 2025, the court dismissed Debtor's case for failure to file missing documents. Doc. No. 16. After the dismissal was vacated, the court was forced to issue three Orders to Show Cause Why Case Should Not be Dismissed for re: Failure to Pay Installment or Miscellaneous Fees. Doc. Nos. 46, 53, 65. Mr. Landau requested to appear via Zoom at a hearing that he requested to be scheduled on shorten time despite the court's express order that all parties must appear in person in Camden, New Jersey. Doc. No. 63. The Section 341 Meeting of Creditors was continued twice because Debtor and Mr. Landau did not appear with copies of her petitions and schedules. Doc. No. 61. The 341 Meeting has been continued for a third time until January 14, 2026 — nearly six months after the filing of this case. Doc. No. 74. Mr. Landau has filed pleadings in the wrong proceedings. Doc. No. 58. Even when Mr. Landau has managed to timely file documents, the Clerk's Office has been obligated to issue Correction Notices because the filings were incomplete, contained the wrong codes, documents were missing, and the proposed orders were incomplete. *See generally*, Docket No. 25-17633.

### **Motion to Transfer Case To Southern District of New York**

For the sake of brevity, the court incorporates the entirety of the foregoing finding of facts, conclusions of law and discussions as if set forth in full herein.

Finally, the court will address the Debtor's Motion to Transfer pursuant to 28 U.S.C. § 1412. Venue is proper for a bankruptcy case in any judicial district where the Debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for "a longer portion" of the 180 days prior to the petition date. 28 U.S.C. § 1408(1). Venue is proper in this district because the Debtor's resides in the district and the Property is located in this district. Even if venue is proper, the court may transfer venue to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The moving party bears the burden of proof that another forum is more appropriate and convenient and therefore, that a transfer is warranted under 28 U.S.C. § 1412. *In re Kennedy*, Nos. 12-19432 ELF, 13-0092, 2013 WL 5230026, at *1 (Bankr. E.D. Pa. Sep. 9, 2013). "The decision whether venue should be transferred lies within the sound discretion of the bankruptcy court." *In re Alcorn Corp.*, No. 12-13742 ELF, 2012 Bankr. LEXIS 3346, at *1 n.2 (Bankr. E.D. Pa. July 20, 2012) (referencing *In re Hechinger Inv. Co. of Del., Inc.*, 296 B.R. 323, 325 (Bankr. D. Del. 2003) and *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 406 (Bankr. E.D. Pa. 2002)).

The interest of justice standard is "a broad and flexible standard that is applied based on the facts and circumstances of each case." *In re LTL Mgmt. LLC*, No. 21-30589, 2021 Bankr. LEXIS 3173, at *15 (Bankr. D.N.J. Nov. 16, 2021) (*In re Enron Corp.*, 284 B.R. 376, 403 (Bankr. S.D.N.Y. 2002)). In evaluating the interest of justice, courts consider whether transferring venue promotes "the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness." *In re Laguardia Assocs., L.P.*, 316 B.R. 832, 837 (Bankr. E.D. Pa. 2004) (*quoting In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)).

The interests of justice would not be served by transferring this case to the Southern District of New York. The Debtor is a resident of this district and the Property is located in this district. As discussed above, the Property was ***never*** property of the Ditech estate and is not part of the Debtor's estate. Because the Property is not property of the Ditech estate, neither the Property nor the Debtor have any relation to the Ditech case. The Ditech court recently issued an opinion in which it held that where Ditech held no remaining legal or equitable interest in the property on the petition date, that property was not property of the Ditech estate and the court lacked jurisdiction to grant any relief. *In re Ditech Holding Corp.*, 2025 WL 2489206, at *8 (Bankr. S.D.N.Y. Aug. 28, 2025). Here, the mortgage was transferred to WSFS five months prior to Ditech's petition date. Accordingly, Ditech no longer had any legal or equitable interest in the Evola mortgage and the mortgage was never property of the Ditech estate. Given this factual posture it would not be in the interests of justice to transfer this case to the Southern District of New York. The Debtor's request to transfer this case to the Southern District of New York must be denied.

17

## CONCLUSION

For all of the foregoing reasons, the *Motion to Transfer Case To Southern District of New York, Motion To Reinstate Stay* shall be and hereby is DENIED in its entirety.

As the court has repeatedly suggested to Mr. Landau throughout this case, any relief he seeks on behalf of the Debtor from the Foreclosure Judgment and/or the Sheriff's Deed must come from the state court not this court and/or the Bankruptcy Court for the Southern District of New York.

An appropriate order for each Motion has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: December 17, 2025