**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>Jan N. Evola,<br><br>Debtor. | Case No.: 25-17633-ABA<br><br>Hearing Date: October 20, 2026, at 2 p.m.<br><br>Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before this court is the Motion for Relief from Stay, Prospective *in rem* Relief from Automatic Stay (hereinafter the "Stay Relief Motion"), Doc. No. 128, filed by U.S. Bank Trust, National Association, not in its individual capacity, but solely as owner trustee for RCF 2 Acquisition Trust ("U.S. Bank") and Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust ("Wilmington", and collectively with U.S. Bank, "Affected Creditors"). For the reasons that follow, the court grants the Stay Relief Motion with prospective *in rem* relief.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O) and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. The record is now closed. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## PROCEDURAL HISTORY

Unfortunately, this bankruptcy case has a tortured procedural history. Nevertheless, it is important here. At the same time, in connection with this Stay Relief Motion, the court will not revisit any of its previous rulings but merely offer summations where pertinent.

On July 21, 2025, Jan N. Evola (the "Debtor") filed her current Chapter 7 petition in the United States Bankruptcy Court, District of New Jersey under docket number 25-17633 ("Evola

Bankruptcy"). Doc. No. 1.[1] On August 12, 2025, the Evola Bankruptcy was dismissed. Doc. No. 16. On August 13, 2025, Debtor filed a motion to vacate the order dismissing the Evola Bankruptcy and to reinstate the Evola Bankruptcy. Doc. No. 18. Then, on August 15, 2025, Debtor filed another motion to vacate the order dismissing the Evola Bankruptcy and reinstate the Evola Bankruptcy but this time on shortened time. Doc. No. 22. On August 26, 2025, the court vacated the dismissal of the Evola Bankruptcy. Doc. No. 30.

On August 29, 2025, Wilmington filed a motion for prospective *in rem* relief from the automatic stay with regard to 59 Stoneham Drive, Delran, New Jersey 08075 (the "Property"). Doc. No. 32. The Debtor filed opposition alleging an invalid transfer/assignment *to Wilmington,* an invalid Sheriff's Deed, and a violation of the automatic stay in the chapter 11 bankruptcy case filed by Ditech in the United States Bankruptcy Court, Southern District of New York under docket number 19-10412 ("Ditech Bankruptcy"). Doc. No. 42. Wilmington filed a supplemental response. Doc. No. 48. The Debtor failed to file any response thereto. *See* 9/16/25 Docket entry: Minute of 9/16/2025 Hearing.

On October 10, 2025, the court entered an order granting *in rem* prospective relief from the automatic stay with respect to the Property in favor of Wilmington and its successors (the "First Stay Relief Order"). Doc. No. 51. The court's decision to grant stay relief to Wilmington was based upon the arguments before it and evidence provided through the submission of the underlying mortgage loan documents and assignments, the foreclosure judgment, and the sheriff's deed to Wilmington. No other argument or evidence was presented. Doc. No. 50 (Oral Stay Relief Opinion and Stay Relief Order). Accordingly, because the Debtor had no legal or equitable interest in the Property, relief from stay was warranted. The court dismissed the Debtor's arguments noting that those arguments ignore, *inter alia*, that fact that the foreclosure judgment and assignment to Wilmington preceded the Ditech Bankruptcy filing; the issues raised should have been brought before the state court where the Debtor and her husband fully participated; and the court must give the New Jersey foreclosure judgment preclusive effect. In sum, Wilmington demonstrated that it was the successful purchaser at sheriff's sale and that the sheriff's deed was issued in its name and further that the Debtor had not set aside the foreclosure judgment or sheriff's sale. The First Stay Relief Order specifically provided "It is further ORDERED that the movant, its successors or assignees, may proceed with its rights and remedies under the terms of the subject mortgage and pursue its state court remedies…." Doc. No. 51 at 3.

The Debtor did not appeal the First Stay Relief Order. After the appeal period expired, the Debtor filed a *Motion to Transfer Case To Southern District of New York, Motion To Reinstate Stay* ("Transfer Motion"). Doc. No. 56. U.S. Bank filed an Objection to the Transfer Motion and thereafter a Supplemental Response. Docs. Nos. 62 and 73. On December 17, 2025, the court entered a memorandum decision and separate orders denying the Transfer Motion in its entirety.

[1] Debtor and her husband Maurizio are unsuccessful serial filers of 11 previous individual chapter 13 bankruptcy cases between them (none of which were completed). The court can and does take judicial notice of the Dockets in any other case filed by the Debtor and her husband. Fed. R. Evid. 201, incorporated in these proceedings by Fed. R. Bankr. P. 9017. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014); *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995); *Thomas v. TEKsystems, Inc.,* No. 2:21-CV-460, 2026 WL 409272, at *1 (W.D. Pa. Feb. 11, 2026); *In re Davis*, 597 B.R. 770, 773 (Bankr. M.D. Pa. 2019).

Doc. Nos. 81, 82 and 83.[2] The Debtor appealed the denial of the Transfer Motion to the District Court, Doc. No. 90, which the District Court later denied. Doc. No. 154.

On February 4, 2026, Debtor filed an Emergent Motion for a Stay Pending Appeal ("Emergent Motion"). Doc. No. 101. The court entered an order Temporarily Staying Eviction and setting a briefing schedule. Doc. No. 103. In the course of preparing for argument on the Emergent Motion, U.S. Bank became aware that Wilmington had transferred its interest to U.S. Bank before Wilmington sought relief from the automatic stay. By letter to the court dated March 17, 2026, counsel for U.S. Bank raised the issue that Wilmington arguably lacked standing to seek stay relief at the time it did so, Doc. No. 117, and thereafter submitted an Order pursuant to the 7-day Rule voluntarily vacating the Stay Relief Order, without prejudice to the right of U.S. Bank to seek the same relief. That order was entered on April 9, 2026. Doc. No. 121.

On April 24, 2026, U.S. Bank filed its Stay Relief Motion seeking prospective *in rem* relief from the automatic stay with regard to the Property. Doc. No. 128. On May 12, 2026, Debtor filed a cross-motion for alleged violations of the automatic stay (the "Cross Motion"). Doc. No. 133. On May 13, 2026, U.S. Bank requested an adjournment of the Stay Relief Motion to allow it to address the issues raised in the Cross Motion.

On May 26, 2026, Debtor filed a Motion for Withdrawal of Reference. Doc. No. 140. On May 28, 2026, this court stayed consideration of the Stay Relief Motion and the Cross Motion until the District Court decided the Motion for Withdrawal of Reference. 5/28/26 Text Order. On September 1, 2026, the District Court denied the Debtor's Motion for Withdrawal of Reference. Doc. No. 153. The court immediately scheduled a status hearing for September 15, 2026. Doc. No. 159.

---

[2] Of note, only after the parties made their final submissions on the Transfer Motion, the Debtor and her husband on December 12, 2025 commenced an adversary proceeding in the Ditech Bankruptcy. In that adversary proceeding they asserted claims against Ditech, Wilmington, U.S. Bank, and foreclosure counsel, Robertson, Anschutz, Schneid, Crane & Partners. Adv. Pro. No. 25-01155-lgb (Bankr. S.D.N.Y.) (the "NY Adversary Proceeding"), Doc. No. 3. The Evolas asserted claims for violations of (1) the automatic stay, (2) 11 U.S.C. §§ 549 and 550, 11 U.S.C. § 548 fraudulent transfer, (3) the Ditech plan injunction. (4) civil conspiracy, (5) declaratory judgment, (6) sanctions, (7) turnover under 11 U.S.C. § 542, (8) Truth in Lending Act, and (9) Fair Debt Collections Practice Act. *Id.* The Evolas sought avoidance of assignments, invalidation of the sheriff's sale and Foreclosure Judgment, restoration of title, damages, sanctions, attorneys' fees, and a permanent injunction. *Id.* On the filing of a Motion to Dismiss the NY Adversary, the Ditech Court dismissed all the Evolas' claims holding they lacked standing to enforce the Ditech automatic stay because they were not Ditech's trustee, the Ditech Debtor, or a Ditech creditor. Case No. 25-17633-ABA, Doc. No. 130 at 36, Bankr. S.D.N.Y. Hearing Transcript and Oral Opinion (docketed by Eric. S. Landau). The claims for fraudulent transfer and avoidance were also dismissed because the Evolas were not the trustee, the Ditech Debtor, or another party authorized to act for the estate. *Id.* at 37. Additionally, the court held the Evolas were not a party authorized to pursue the claims preserved by Ditech's Plan and Confirmation Order. *Id.* at 37-38. The Ditech Court concluded that this court's determination that the Evola Mortgage was not transferred post-petition and that the Evola Mortgage was never part of the Ditech estate could not be revisited. *Id.* at 38-39. The Ditech Court held that the Evolas' attempts to invalidate the Foreclosure Judgment were barred by *res judicata*, the *Rooker-Feldman* Doctrine, and the preclusive effect of this court's prior holdings. *Id.* at 39-40. Finally, the Ditech Court held that the request for permanent injunctive relief was an attempt to interfere with the state court Foreclosure Judgment and was barred by collateral estoppel, *res judicata*, and/or the *Rooker-Feldman* Doctrine. *Id.* at 40-41. The Evolas did not appeal the dismissal of the NY Adversary Proceeding.

On September 14, 2026, Mr. Landau contacted the court via telephone requesting an adjournment of the status conference. Because Mr. Landau was unable to attend the status conference, on September 15, 2026, the court docketed a Text Order where it determined, *inter alia,* that the status conference was no longer necessary, and no appearances would be required. Instead, the court issued a scheduling order directing U.S. Bank to file an opposition to the Cross Motion and scheduled oral argument for October 20, 2026, at 2 p.m. U.S. Bank filed its Opposition to the Cross Motion. Doc. No. 163. A hearing was held on October 20, 2026. The record is closed, and the matter is ripe for adjudication.[3]

## FACTS

The following facts are indisputable. On November 26, 2014, the Affected Creditors' predecessor Green Tree Servicing, LLC n/k/a Ditech Financial, LLC ("Ditech"), commenced an action in the Superior Court of New Jersey, Burlington County, under Docket Number F-050024-14 (the "Foreclosure Action") against the Debtor and other defendants to foreclose the Property. Doc. No. 128-2 at Ex. A. Ditech sought to foreclose on a mortgage, dated July 8, 2003 (the "Evola Mortgage") executed by the Debtor and Maurizio Evola in favor of Ditech's predecessor-in-interest, Countrywide Home Loans, Inc., which secured a note of the same date (the "Note" and collectively with the Evola Mortgage and its various assignments, the "Evola Loan") and encumbered the Property. Doc. No. 128-2 at Ex. B. The Evolas had been delinquent upon their mortgage payments since August 1, 2009. Doc. No. 128-2 at Ex. A, ¶ 7. After "extensive litigation," Doc. No. 128-2 at ¶ 5, and Ex. C, pp. 63-79,[4] on March 3, 2018, a judgment in favor of Ditech was entered against the Debtor and all other defendants in the Foreclosure Action (the "Foreclosure Judgment"). Doc. No. 128-2 at Ex. C, pp. 59-61.

After the entry of the Foreclosure Judgment, on September 13, 2018, Ditech assigned its interest in the Mortgage, which had been reduced to a judgment, to Wilmington via an assignment recorded with the Burlington County Clerk on or about November 1, 2018 ("Ditech Assignment"). Doc. No. 128-2 at Ex. B, pp. 51-52. Thereafter, the foreclosure proceedings continued under the name of Ditech as permitted by New Jersey Rule 4:34-3.[5]

On February 11, 2019, *after* the Ditech Assignment to Wilmington, Ditech filed its chapter 11 case. The transfer of the Evola Mortgage from Ditech to Wilmington was not avoided during the Ditech Bankruptcy. On February 22, 2022, a final decree was entered in the Ditech Bankruptcy

---

[3] A separate Order and Memorandum Decision will be docketed addressing the Cross Motion.

[4] The court can take judicial notice of state court pleadings. *In re Soto*, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998).

[5] Generally, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court on motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." N.J. Ct. R. 4:34-3. *See also Capital One, N.A. v. Franklin*, No. A-0899-18T1, 2019 WL 5690494, at *2 (N.J. Super. Ct. App. Div. Nov. 4, 2019) ("Pursuant to Rule 4:34-3, plaintiff is permitted to continue with the foreclosure despite the transfer of its interest.") AND MYRON C. WEINSTEIN ESQ. & BRIAN KERINS, ESQ., NJ MORTG. FORECLOSURE PRAC. § 8.21 (5th ed. 2021) ("By court rule, if the mortgage is assigned pending foreclosure or even after judgment, the assignor may still prosecute the action, or the assignee may continue the action in the name of the assignor or the assignee may be substituted as plaintiff.").

("Final Decree").

On February 7, 2023, a Pluries Writ of Execution was issued, and thereafter the Sheriff of Burlington County sold the Property to Wilmington at a sheriff's sale as set forth in the sheriff's deed (the "Sheriff's Deed") dated December 5, 2023. Doc. No. 128-3 at Ex. D. In accordance with New Jersey Rule 4:65-5, the Sheriff delivered the Sheriff's Deed and transferred the Property to Wilmington on December 15, 2023. *Id.* That Sheriff's Deed was recorded in Burlington County on December 29, 2023. *Id.*[6] Accordingly, Wilmington became the sole and rightful owner of the Property.

On October 17, 2024, Wilmington transferred ownership of the Property to U.S. Bank via a quitclaim deed that was recorded on June 12, 2025 ("U.S. Bank Deed"). Doc. No. 128-3 at Ex. E.[7] It has been represented to the court that U.S. Bank remains the owner of the Property.

The fact that Wilmington may or may not have had the appropriate standing to obtain the First Stay Relief Order is irrelevant and has no impact on these irrefutable facts. U.S. Bank is proceeding on its own rights. What is more, the voluntarily submitted order vacating the Stay Relief Order, Doc. No. 121, makes the possible issue with Wilmington moot.

## THE PARTIES' ARGUMENTS

U.S. Bank argues that it is entitled to relief from the automatic stay and prospective *in rem* relief from the automatic stay because the Debtor does not have any legal or equitable interest in the Property following the sheriff's sale. Doc. No. 128-1 at 1 (citing *Rocco v. J.P. Morgan Chase Bank*, 255 F. App'x 638, 641 (3d Cir. 2007)). U.S. Bank asserts that it has standing to seek stay relief as owner of the Property as a result of the conveyance of the deed from Wilmington to U.S. Bank subsequent to the sheriff's sale and delivery of the Sheriff's Deed. U.S. Bank notes that it has also produced the underlying mortgage loan documents and the Foreclosure Judgment in further support of its entitlement to stay relief. Doc. No. 128-1 at 2 (citing *In re Boydstun*, BAP No. WO-19-20, 2020 WL 241492, at *5 (B.A.P. 10th Cir. Jan. 16, 2020)) (creditor proved standing by providing foreclosure judgment and note, mortgage, and assignment documents to court). U.S. Bank argues that the issue of the validity of the note, mortgage, and chain of title was conclusively decided by entry of the Foreclosure Judgment, and the bankruptcy court is required to give the same preclusive effect to the Foreclosure Judgment that New Jersey courts would, and the Debtor is precluded from relitigating the Foreclosure Action. Doc. No. 163 at 3-4 (citing *In re Adams*, 151 F.4th 144, 153, 156 (3d Cir. 2025)).

U.S. Bank argues that upon delivery of the Sheriff's Deed, which also contained a writ of possession, the Debtor was divested of any possessory interest in the Property and the Debtor does

[6] At the time of the Writ of Execution, the sheriff's sale, and the issuance, delivery, and recording of the Sheriff's Deed, neither the Debtor nor her husband had any bankruptcy case pending.

[7] The court notes that in general, post-petition assignments do not violate the automatic stay. *See In re Ahmadi,* 467 B.R. 782, 792 (Bankr. M.D. Pa. 2012); *In re Samuels,* 415 B.R. 8, 22 (Bankr. D. Mass. 2009).

not have any legal entitlement to occupy the Property, and therefore the Debtor is not afforded the protection of the automatic stay. Doc. No. 128-1 at 2 (citing *Twin Rivers Lake Apartments Horizontal Prop. Regime, Inc. v. Wallner*, No. 05-4560, 2006 WL 2023188, at *9 (D.N.J. July 18, 2006) and *In re St. Clair,* 251 B.R. 660, 665 (D.N.J. 2000)).

U.S. Bank argues that the Debtor's pursuit of the theory that the Evola Mortgage was property of the Ditech estate is fruitless. U.S. Bank notes that this theory has previously been rejected by both this court in its opinion denying the Motion to Transfer and Reinstate Stay, *In re Evola*, No. 25-17633, 2025 WL 3728102, at *10 (Bankr. D.N.J. Dec. 17, 2025), and the Bankruptcy Court for the Southern District of New York when it dismissed the Evolas' adversary complaint against Ditech. Doc. No. 163 at 3. *See also,* footnote 2, above.

U.S. Bank also seeks prospective *in rem* relief due to the Debtor's and her husband's filing of serial bankruptcies. U.S. Bank notes the Debtor and her husband have filed a total of twelve bankruptcies many of which were dismissed immediately after filing. U.S. Bank asserts that *in rem* prospective relief is warranted because these serial filings are a part of a scheme to delay, hinder, or defraud creditors. Doc. No. 128-1 at 3 (citing *In re Gray*, 558 F. App'x 163, 166 (3d Cir. 2014) and *In re Rothman*, No. 23-15073-ABA, 2023 WL 7179180, at *4 (Bankr. D.N.J. Oct. 31, 2023)); Doc. No.128-2 at ¶¶ 20 – 30 (listing twelve bankruptcies filed either by the Debtor or co-mortgagor husband, Maurizio Evola).

The Debtor filed an opposition to the Stay Relief Motion. The Debtor maintains that to the extent that U.S. Bank relies upon assignments, servicing records, or foreclosure related documents those documents without other authentication do not establish standing. Doc. No. 133-1 at 3. Next, the Debtor argues that U.S. Bank has not established party-in-interest standing under 11 U.S.C. § 362(d) because the Note remains payable to Countrywide Home Loans, Inc. and that U.S. Bank has not established possession, endorsement, negotiation, or transfer of the original note under the New Jersey Uniform Commercial Code. Doc. No. 133-1 at 4-5 (citing *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011)). The Debtor further asserts pre-foreclosure mortgage assignments, foreclosure documents, and successor terminology cannot substitute for proof that U.S. Bank is in possession of the original note and is the entity entitled to enforce the note. Doc. No. 133-1 at 5-6. The Debtor contends that these arguments are bolstered by the confusion between Wilmington and U.S. Bank regarding which entity owned the Property at the time the Debtor filed for bankruptcy. Doc. No. 133-1 at 6.

The Debtor also asserts that U.S. Bank's Stay Relief Motion must be denied because U.S. Bank's failure to file a proof of claim means that U.S. Bank has not established creditor status. Doc. No. 133-1 at 7 (citing 11 U.S.C. § 501 and Fed. R. Bankr. P. 3001). The Debtor argues that because standing, ownership of the note, and chain of title are disputed, U.S. Bank is not entitled to a presumption of enforceability. Doc. No. 133-1 at 7-9.

The Debtor also returns to arguments already considered and rejected by this court. The Debtor asserts that the Evola Mortgage was property of the Ditech bankruptcy estate and that there is no evidence that the transfer to Wilmington was authorized by the Ditech court and thus, neither of the Affected Creditors has valid enforceability rights with respect to the Evola Mortgage. The Debtor contends that the quitclaim deed from Wilmington to U.S. Bank only transferred title to

the Property and does not establish U.S. Bank's entitlement to enforce the Note. The Debtor maintains that the current record does not establish (1) whether the transfer from Ditech to Wilmington was valid, (2) whether Wilmington acquired enforceable rights, (3) whether Wilmington transferred any alleged enforceability rights to U.S. Bank, and (4) whether U.S. Bank possesses any right to pursue stay relief. Doc. No. 133-1 at 9-10.

Next, the Debtor argues that U.S. Bank is not entitled to *in rem* relief. The Debtor asserts that there are unresolved issues of fact relating to the note, the mortgage, the assignments, and enforceability rights which cast doubt on U.S. Bank's right to seek stay relief. The Debtor maintains that a continuing possessory interest post sheriff's sale constitutes an interest protected by the automatic stay and U.S. Bank cannot avoid application of the automatic stay by characterizing her as a mere resident without ownership rights. The Debtor asserts that a foreclosure judgment and sheriff's sale do not extinguish her possessory interest in the Property. Doc. No. 133-1 at 11-12 (citing *In re Atlantic Bus. & Cmty. Dev. Corp.*, 901 F.2d 325 (3d Cir. 1990)). The Debtor argues that U.S. Bank may not obtain *in rem* relief merely by relying on a history of bankruptcy filings but rather must prove that the filings were part of a scheme to delay, hinder, or defraud creditors. The Debtor further argues that a mere history of multiple bankruptcy filings is not a sufficient basis upon which to grant stay relief where, as here, there are unresolved issues relating to party-in-interest standing, note enforcement rights, chain of title, and Ditech-related transfer defects. Doc. No. 133-1 at 12.

## DISCUSSION

Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest

The Bankruptcy Code also provides for *in rem* stay relief for creditors holding secured claims against real property "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). *See also In re Gray*, 558 F. App'x 163, 166 (3d Cir. 2014). "A scheme to delay or hinder can be evidenced by the circumstances surrounding multiple petitions, such as whether the petitions were 'timed strategically to stay upcoming trial dates in the state foreclosure matter,' and whether cases did not move forward, 'having apparently served their purpose of staying the foreclosure proceedings.'" *In re Rothman*, 2023 WL 7179180, at *4 (quoting *In re Mazza*, No. 14-6423, 2015 WL 5729262, at *5 (E.D. Pa. Sept. 30, 2015)).

The Debtor spends the majority of her opposition arguing that there are defects in the chain of title and questions of fact regarding the assignment of the mortgage and that U.S. Bank has failed to prove that it is a creditor entitled to enforce its rights under the Evola Mortgage. These

arguments are completely misplaced and based upon the Debtor's own refusal to acknowledge that the state court entered the final Foreclosure Judgment against the Debtor and her husband.

Wilmington became the owner of the Property pursuant to the purchase at the sheriff's sale and delivery of the Sheriff's Deed. Doc. No. 128-3, Ex. D. Wilmington subsequently transferred the Property to U.S. Bank via quitclaim deed. Doc. No. 128-3, Ex. E. U.S. Bank is the legal owner of the Property. U.S. Bank moves for stay relief not as a creditor of the Debtor who is enforcing its right to collect on a note, but as the owner of the Property.[8] The Third Circuit has recognized that:

> In New Jersey, the successful bid at a foreclosure auction is generally irrevocable, . . . and the bidder acquires equitable title that is not subject to defeasance except under narrow circumstances. If, for instance, within ten days of the foreclosure sale, the mortgagor files objections that are judicially sustained, N.J. Ct. R. 4:65–5, or exercises the right of redemption, *Hardyston Nat'l Bank of Hamburg v. Tartamella,* 56 N.J. 508, 267 A.2d 495, 498 (1970), the purchaser may lose equitable title. . ..

*In re Connors*, 497 F.3d 314, 320 (3d Cir. 2007) (citations omitted). What is more, "upon issuance of the deed, the buyer at the sale was vested with legal title to the property. Whatever inchoate rights the former mortgagor had at the time of her bankruptcy filing, prior to the delivery of the deed, were lost because she failed to object to the sale pursuant to *R.* 4:65–5." *Union Cnty. Sav. Bank v. Johnson*, 210 N.J. Super. 589, 594, 510 A.2d 288, 291 (Ch. Div. 1986). *See also In re Ziyambe*, 200 B.R. 790, 794 (Bankr. D.N.J. 1996) (purchaser at sheriff's sale is vested with legal title upon the delivery of the deed). To be sure, the Debtor here has not had any court overturn the foreclosure judgment or set aside the Sheriff's Deed since it was issued in 2023.

Because of the foreclosure sale and the subsequent issuance of the Sheriff's Deed, at the time of the filing of her case, the Debtor did not have any legal or equitable interest in the Property. *In re Rocco*, 319 B.R. 411, 415–16 (Bankr. W.D. Pa. 2005) (analyzing similar state law), *aff'd sub nom. Rocco v. J.P. Morgan Chase Bank*, 255 F. App'x 638 (3d Cir. 2007); *In re Boydstun*, 2020 WL 241492, at *5 (holding that Selene by presenting the court with the note, mortgage, and assignments along with the final state court foreclosure judgment "met the low threshold of proving it was a party in interest with a colorable claim for stay relief….") (other citations omitted). And while the Debtor's mere possessory interest in the Property invokes the automatic stay, *In re Atlantic Bus. & Cmty. Dev. Corp.*, 901 F.2d 325 (3d Cir. 1990), it has no impact on U.S. Bank's

[8] Indeed, U.S. Bank is not able to seek stay relief as creditor enforcing its rights under the Evola Mortgage. Upon entry of the final Foreclosure Judgment, the note and mortgage merged into the Foreclosure Judgment. Thus, U.S. Bank is enforcing its rights as the owner of the Property in this chapter 7 case pursuant to the Foreclosure Judgment and subsequent sheriff's sale. *In re Jersey City Cmty. Hous. Corp.*, No. 23-2036, 2024 WL 1254833, at *2 (3d Cir. Mar. 25, 2024) (Under New Jersey law, a "mortgage merges into the final judgment of foreclosure…The mortgage contract is then extinguished and all contract rights in the mortgage "merge" into the final foreclosure judgment.") (citing *Customers Bank v. Reitnour Inv. Props., LP*, 453 N.J. Super. 338, 181 A.3d 1038, 1045 (N.J. Super. Ct. App. Div. 2018) and *In re Roach*, 824 F.2d 1370, 1377 (3d Cir. 1987)). U.S. Bank moves to enforce its rights to possession as the **owner** of the Property.

standing here. Agreeing with many courts, one court noted, "[a]lthough the debtor currently is in possession of the…the realty, possession by a debtor alone, without any right of ownership or contractual right to possession, is not protected to any great degree by the bankruptcy stay. Relief from the stay is typically granted to the owner, or a secured creditor of the owner, when the debtor has no right to possession." *In re Parker*, 624 B.R. 222, 228–29 (Bankr. W.D. Pa. 2021) (citations omitted). *See also In re St. Clair*, 251 B.R. 660, 665-66 (D.N.J. 2000) (concluding that where a final foreclosure judgment awarded possession to the purchaser and upon issuance of a writ of possession any possessory interest a mortgagor may have had is expunged and the property is not property of the debtor's estate).

Under New Jersey law, U.S. Bank is the legal owner of the Property by way of the Sheriff's Deed issued in 2023 to Wilmington and the subsequent quitclaim deed from Wilmington. The Debtor here does not have any current right to possession and was in the process of being evicted when she filed her case. Consequently, U.S. Bank is a party in interest which has standing to bring this motion due to its legal interest in and ownership of the Property and furthermore, cause exists under section 362(d)(1) to grant the Stay Relief Motion due to the legal interest and rights provided to it under New Jersey law.

The Debtor's arguments that the confusion between Wilmington and U.S. Bank regarding who was the owner of the Property when Wilmington filed the motion for relief from stay are meritless. Wilmington presented the court with the note, mortgage, and assignments along with the final state court Foreclosure Judgment and Sheriff's Deed. Doc. Nos. 32-5 and 32-6. The Debtor did not provide to the court any evidence that rebutted Wilmington's evidence in support of its stay relief motion. Having reviewed this evidence, the court granted stay relief on the basis that Wilmington was the owner of the Property pursuant to the Sheriff's Deed and because the Debtor did not possess any legal or equitable interest in the Property. The court's conclusion that the Debtor did not possess any legal or equitable interest in the Property is not invalidated in any way by the fact that U.S. Bank is the owner of the Property via quitclaim deed. The post sheriff's sale confusion between Wilmington and U.S. Bank in no way changes the analysis regarding the Debtor's legal and equitable interests in the Property.

To the extent that the Debtor is relying upon alleged defects in the chain of title and other alleged inconsistencies relating to pre-foreclosure judgment mortgage assignments, those issues or claims were resolved by the state court upon entry of the final Foreclosure Judgment. Such claims are barred by the doctrine of *res judicata* or claim preclusion and the Full Faith and Credit Statute, 28 U.S.C. § 1738, and the Entire Controversy Doctrine. Bankruptcy and District Courts "give the New Jersey foreclosure judgment the same preclusive force New Jersey courts would." *In re Adams*, 151 F.4th 144, 156 (3d Cir. 2025). As the court has repeatedly told the Debtor, if she wishes to get relief from the final Foreclosure Judgment and Sheriff Sale here, she must seek relief from the state court.

"Under the doctrine of claim preclusion," a prior "final judgment forecloses 'successive litigation of the very same claim.'" *Adams*, 151 F.4th at 153 (other citations omitted). Under Federal law, a debtor's claims are precluded if the foreclosure judgment was "valid, final, and on the merits; (2) the parties in the later action are identical to, or in privity with, those in the prior

action; and (3) her claim in this later action stems from the same transaction or occurrence as the claim in the earlier foreclosure action. *Id.* at 156 (internal quotation marks omitted).

The court concludes the Foreclosure Judgment was valid, final, and on the merits; (2) Ditech, Wilmington, and U.S. Bank were in privity via the valid chain of assignment, the Foreclosure Judgment, sheriff's sale, Sheriff's Deed, and the U.S. Bank deed; and (3) the Debtor's claims are nothing more than a rehashing of the foreclosure, including standing issues, and an attempt to overturn the state court's Foreclosure Judgment. It is evident that the Debtor and/or her spouse extensively participated in the state court litigation where a valid final ruling on the merits was issued. The Debtor had a full and fair opportunity to litigate these claims in state court and did. The issues regarding the chain of title and validity of assignments going back to the initial assignment in 2008 should have naturally been raised in state court over eight years ago. If not, the Debtor should have sought relief from the Foreclosure Judgment. The fact that there was a sheriff's sale and the Sheriff's Deed issued demonstrates that the Debtor was not successful in state court. The law is clear: an entry of a final judgment in a state court of competent jurisdiction must be binding in a later bankruptcy proceeding. *Adams*, 151 F.4th at 152 ("Imagine a legal system in which that were a winning strategy: If you whiff in state court, take your mulligan and come to federal court for another swing. State-court judgments would be near-worthless. To ensure those judgments receive the full faith and credit promised by the Constitution, art. IV, § 1, and to safeguard the efficiency and finality of litigation, we apply principles of preclusion").

The Debtor's claims regarding the Property and the assignments are also barred by the Full Faith and Credit Statute. The court is required to give the same full faith and credit to the New Jersey Foreclosure Judgment as it would receive in New Jersey. *See* 28 U.S.C. § 1738; *In re Knapper*, 407 F.3d 573, 584 (3d Cir. 2005) ("a final judgment has been entered by the state court, the Full Faith and Credit statute, 28 U.S.C. § 1738, requires such judgment be accorded the same respect and finality in federal court it would receive in its state of origin.") (citing *McDonald v. City of West Branch*, 466 U.S. 284, 287, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984)). "It is inappropriate, therefore, for the Bankruptcy Court to stand in judgment of the merits of the valid state court judgment." *Knapper*, 407 F.3d at 584.

The Entire Controversy Doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *In re Farzan*, Nos. 24-1236, 24-1237, 2025 WL 100798, at *2 (3d Cir. Jan. 15, 2025) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997)) (internal quotation marks and citation omitted). In the context of foreclosure proceedings, the doctrine is narrowed, allowing only "germane" claims to be precluded if they are not brought by a party to the case. *In re Ladika*, Nos. 23-18387, 24-01064, 2024 WL 4712991, at *3 (Bankr. D.N.J. Nov. 7, 2024) (citing N.J. Ct. R. 4:64-5). If claims arise out of the mortgage that is the basis of the foreclosure action, then they are considered germane. *Id.* (citing *Leisure Tech-N.E., Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358, 349 A.2d 96 (App. Div. 1975); *Delacruz v. Alfieri*, 447 N.J. Super. 1, 12-16, 145 A.3d 695 (Law Div. 2015)). Here, the Debtor's claims and complaints originating from and germane to the mortgage, the assignments, and the foreclosure are precluded by the Entire Controversy Doctrine.

The Debtor's continued pursuit of the theory that the mortgage was property of the Ditech bankruptcy estate and that the transfer of the mortgage to Wilmington was unauthorized and thus the subsequent Foreclosure Judgment, sheriff's sale, Sheriff's Deed, and quitclaim deed to U.S. Bank were invalid is based completely in fantasy. Doc. No. 133-1 at 10. On September 13, 2018, Ditech assigned the Evolas' mortgage to Wilmington. Ditech filed for bankruptcy nearly five months later on February 11, 2019. Because the Evolas' mortgage had been assigned to Wilmington prior to the Ditech bankruptcy and not recovered by the Ditech estate, the Evolas' mortgage was never part of the Ditech estate. *See* 11 U.S.C. § 541(a)(1), (a)(3) (defining property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the trustee recovers"). This court has previously rejected the Debtor's claims regarding the Ditech estate and the Bankruptcy Court for the Southern District of New York has also rejected this claim. Doc. No. 50 (Oral Stay Relief Opinion); Doc. No. 131 (Bankr. S.D.N.Y. May 5, 2026 Hearing and Oral Opinion). *See also,* footnote 2, *supra*.

The Debtor's argument that U.S. Bank's motion must be denied because U.S. Bank did not file a proof of claim after the Chapter 7 Trustee designated the Evola Bankruptcy as an "asset case" is also a dead end. The term "claim" means "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…." 11 U.S.C. § 101(5). As explained above, U.S. Bank is seeking stay relief as the **owner** of the Property not as a creditor of the Debtor because U.S. Bank does not have a claim against the estate. The Property is not property of the Evola bankruptcy estate because the Debtor did not have any legal or equitable interest in the Property following delivery of the Sheriff's Deed. Because the Property is not property of the estate, U.S. Bank is not a creditor and need not file a proof of claim.

In the alternative, even if the court were to accept the Debtor's position that U.S. Bank is to be viewed as a creditor in this case, for the numerous reasons set forth above, U.S. Bank would be a secured creditor. And there simply is not any requirement that a secured creditor file a proof of claim to be a creditor of the Debtor. As the court in *In re Krause*, 414 B.R. 243, 259 n.13 (Bankr. S.D. Ohio 2009) noted:

> In fact, a secured creditor in a chapter 7 case need not file a proof of claim unless it wants to preserve the opportunity for a distribution on any unsecured deficiency, because liens remain unaffected by bankruptcy proceedings absent specific alteration by the court. *See Dewsnup v. Timm,* 502 U.S. 410, 417–18, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *In re Fink,* 366 B.R. 870, 879 (Bankr. N.D. Ind. 2007); see also [Bankruptcy Rule] 3002 Advisory Committee Note (1983) (secured claim need not be filed); *Womack Lumber Co., Inc. v. Guaranty Mortgage Co. (In re Bain),* 527 F.2d 681, 686 (6th Cir.1975) ("[A] secured creditor need not file proof of claim in order to rely upon and to enforce his mortgage").

*Krause*, 414 B.R. at 259 n.13. Debtor's argument is just a red herring or at best, it is an argument for distribution under 11 U.S.C. § 726 which is not the issue here. The applicable Rule is clear: "A

lien that secures a claim is not void solely because an entity failed to file a proof of claim." Fed. R. Bankr. P. 3002. Here, U.S. Bank, as a secured creditor, would not be required to file a proof of claim because its claim is secured by its collateral, i.e., the Property. "A secured creditor is not required to file a claim and failure to do so does not divest the creditor of its lien." *In re Woodard*, 532 B.R. 241, 246 (Bankr. E.D. Pa. 2015) (observing that secured creditor who does not participate in the bankruptcy process may instead rely on its collateral to provide satisfaction for the underlying debt) (citing *In re Mansaray-Ruffin*, 530 F.3d 230, 235 n.4 (3d Cir. 2008)); *In re Weyer*, 612 B.R. 192, 195–97 (Bankr. W.D. Wis. 2020), *aff'd Weyer v. Valley Communities Credit Union*, No. 19-cv-926-wmc, 2022 WL 1597293 (W.D. Wis. May 18, 2022) (holding that a failure of a secured creditor to file a proof of claim did not preclude stay relief under Section 362(d)(1)).

The Debtor's opposition based upon U.S. Bank's lack of standing and/or her unsupported legal theories, is overruled.

Finally, the court concludes that *in rem* prospective relief is warranted under Section 362(d)(4) because it finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors involving multiple bankruptcy filings by the Debtor and/or her spouse affecting the Property.

The fact that ten of the twelve cases lasted anywhere from three weeks to several months, with only one case lasting more than a year, together with the wasted litigation efforts that further hindered and delayed this case, convinces this court that these multiple filing evidence a scheme to delay or hinder the Affected Creditors in their efforts to enforce their rights. *Gray*, 558 F. App'x at 166. The Debtor's arguments that the underlying foreclosure judgment is invalid seem to just be an attempt to take another bite at the apple especially where she never sought relief from the Foreclosure Judgment or Sheriff Sale in the state court. Moreover, even if the Debtor can set aside the foreclosure judgment, the Debtor can be made whole through monetary recovery rather than possession of the Property. There is not any benefit in delaying U.S. Bank from enforcing its rights directly against the Property and the Debtor should not be able to throw up roadblocks by repeated filings which, in the past, served no purpose other than to hinder and delay.[9] The dismissal of each and every case is ample evidence of that scheme. *Rothman*, 2023 WL 7179180, at *4.

The Debtor's objection to *in rem* relief is overruled. A two-year bar, as provided for by the statute, is warranted.

---

[9] While Section 362(d)(4) specifically refers to "a creditor," the court does not believe that U.S. Bank as owner of the Property should receive any less protection than a creditor enforcing its rights under a note and mortgage.

## CONCLUSION

For all of the foregoing reasons, the court concludes that U.S. Bank as owner of the Property is entitled to relief from the automatic stay in order to proceed with its remedies under New Jersey law. The court also concludes that prospective *in rem* relief pursuant to Section 362(d)(4) is appropriate as the Debtor and her husband have engaged in a scheme to hinder, delay, and defraud by serial filing of twelve bankruptcy petitions over the last eighteen years. Consequently, a two-year bar shall be imposed and the automatic stay will not apply to the Property in the event either the Debtor or her husband file another bankruptcy.

Dated: November 4, 2026

/s/ Andrew B. Altenburg, Jr., Judge
United States Bankruptcy Court